642 P.2d 949

**Carol V. GRIFFIN, Plaintiff-Appellant,**

v.

**William A. GRIFFIN,
Defendant-Respondent.**

**No. 13728.**

Court of Appeals of Idaho.

March 16, 1982.

Holly Mercer of Cantrill & Skinner, Boise, for plaintiff-appellant; David W. Cantrill, Boise, on the brief.

Stanley W. Welsh of Clemons, Cosho & Humphrey, Boise, for defendant-respondent.

SWANSTROM, Judge.

In this appeal we take the third judicial look at the division of property in a divorce case. The magistrate who tried the property issues determined that a residence called the Vallejo property was the separate property of the husband. The wife appealed to the district court contending the magistrate should have found the Vallejo property to be community property, either under the

theory that it had been acquired and improved largely by the expenditure of community funds and the labor of the parties, or because its character had been "transmuted" from separate to community. The district court reviewed the record, affirmed the magistrate's decision, and awarded attorney fees to the husband on appeal. The wife appealed again. We affirm, except as to the award of attorney fees.

In February, 1975, William Griffin entered into a contract to purchase the Vallejo property, paying $1,000 down and agreeing to pay $260 monthly. At the time of purchase a partially completed home was on the property. Appellant and respondent, although not married, were living together at a different location. Both parties contributed their labor in fixing up the Vallejo property. In May, 1976, the parties were married. Each continued to work on the Vallejo property, and in September, 1976, they moved onto the property. The house at that point was habitable but not completed. In September the property was refinanced by a $35,000 loan. The loan application was signed by both parties and it stated that title to the property would vest in the names of both as joint tenants. A note and deed of trust were signed by both parties and both were liable for the loan. William Griffin's contract was paid off by the lender, and the seller's deed, dated February 5, 1975, naming "William Allen Griffin, a single person, the grantee," was recorded. Thereafter record title to the property remained in the husband's name. The parties made payments on the loan from community funds, and both worked toward finishing the property. In 1977 the husband spent approximately $8,000 of his separate funds in improvements.

In January, 1978, the parties separated. The wife continued to live on the property, made the loan payments, and expended additional community funds and her labor in its upkeep. Between January, 1978, and July, 1979, these payments of principal, interest, taxes and insurance made by the wife from community funds totaled $5,712. She also expended $2,567 of community funds for repairs and improvements. The

original loan balance was reduced by less than $1,000 by all of the payments made by the parties.

On March 9, 1979, the parties were divorced but no division of the parties' assets and debts was made because of an expected settlement. The settlement did not occur, and the magistrate conducted a hearing on the property issues in July, 1979.

The magistrate determined that the Vallejo home was the separate property of the husband, acquired before marriage, with a value of $42,500 at the time of the marriage. He found its value had increased to $60,000 by the time of the divorce. The magistrate also found the expenditure of community funds and labor resulted in $5,000 of the increase in value, and $12,500 of the increased value was due to "natural enhancement in value resulting from the general and rapid increase in real property values in Ada county." The magistrate also heard evidence concerning numerous items of personal property. The Vallejo property was decreed to be the sole and separate property of the husband, and he was made responsible for payment of the loan balance of approximately $34,000. As part of the overall division of community assets and liabilities the wife was allowed $2,500, representing one-half of the increased value of the Vallejo property due to expenditure of community funds toward its improvement.

■ Because the judgment of the magistrate was affirmed on appeal to the district court, our function in this appeal is to review independently the record of the proceedings conducted by the magistrate to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Nicholls v. Blaser*, 102 Idaho 559, 633 P.2d 1137 (1981).

■ The wife asserts the magistrate erred in determining the Vallejo home was the husband's separate property. She contends, because community funds were used in making payments on the property, and because the refinancing loan, used to pay

off the seller and obtain title, was signed by both spouses, the property should have been characterized as community property. This contention is contrary to Idaho law.

In *Fisher v. Fisher*, 86 Idaho 131, 383 P.2d 840 (1963), a case where the husband entered into an installment contract to purchase property prior to marriage, the Idaho Supreme Court held the property took on the character of his separate property. The court held that the use of community funds to make payments on the purchase price does not change the character of the property from separate to community. However, the non-owner spouse has the right to reimbursement for one-half of the community funds applied toward payments on the property. 86 Idaho at 136, 383 P.2d at 843. Here the magistrate did not err in finding the Vallejo home was the separate property of William Griffin when it was acquired.

■ No issue has been raised in this appeal that the magistrate failed to allow the community a proper credit for the expenditure of community funds to make the mortgage payments on Vallejo. Likewise it is not contended that the magistrate failed to correctly apply Idaho law in determining the extent and amount of the wife's reimbursement for expenditure of community funds and labor in improving the Vallejo property. *See Suter v. Suter*, 97 Idaho 461, 546 P.2d 1169 (1976).

The second issue we address is the transmutation issue. "Transmutation is a broad term used to describe arrangements between spouses which change the character of property from separate to community and vice versa." W. Reppy and W. DeFuniak, Community Property in the United States, 421 (1975).

The wife claims that even if the Vallejo home originally was William Griffin's separate property there was a transmutation of its status from separate to community when it was refinanced in September, 1979. The wife claims the magistrate erred in concluding that the property retained its separate nature.

In his findings of fact and conclusions of law, the magistrate did not discuss the transmutation issue. He merely found the property retained its separate character, which is to say, of course, that no transmutation had occurred. On appeal the district court noted the uncertainty as to whether the doctrine of informal or oral transmutation exists in Idaho. *See Hooker v. Hooker*, 95 Idaho 518, 523, 511 P.2d 800, 805 (1973). The district judge concluded that because the Idaho Supreme Court has not clearly accepted or rejected the transmutation concept it would assume the doctrine might be applicable. The district court then looked to the decisions of other community property states which recognize the doctrine. The district court held that the wife had the burden to show there was a written or oral agreement to transmute the property from separate to community. The agreement may be informal; but the intent of the owner of property to transmute that property must be shown by clear and convincing evidence, in absence of an explicit agreement. *E.g. Beam v. Bank of America*, 6 Cal.3d 12, 98 Cal.Rptr. 137, 490 P.2d 257 (1971). The district court then held that appellant had failed to show either an explicit agreement or an intent to transmute, and failed to show by clear and convincing evidence that a transmutation in fact took place.

■ In the present case, both parties signed a loan application form, as well as a note and deed of trust on the Vallejo property. The loan application form contained the following two questions and answers:

"Title Will Vest In What Names?

"William & Carol V. Griffin

"How Will Title Be Held? (Tenancy) "Joint."

However, as noted in the decision of the district court, "the existence of the plaintiff's signature on the deed of trust in all likelihood can be explained away as a precautionary measure required by a prudent creditor." The statements on the loan application offer some support to appellant's transmutation argument, but they are not predominant.

The Idaho Supreme Court has repeatedly held:

"[A] finding of a trial court that property is either separate or community in character, is binding and conclusive upon the appellate court, if it is based upon conflicting evidence or upon evidence which is subject to different inferences * * * and will not be disturbed on appeal."

*Fisher v. Fisher*, 86 Idaho 131, 137, 383 P.2d 840, 843; *Ripatti v. Ripatti*, 94 Idaho 581, 584, 494 P.2d 1025, 1028 (1972). The magistrate did not err in finding that no transmutation occurred.

This case was argued before we issued our decision in *Stockdale v. Stockdale*, 102 Idaho 870, 643 P.2d 82, (Ct.App.1982). In that case we felt compelled to address the transmutation issue directly. We held that Idaho law does not recognize transmutation of real property by oral agreement. Our conclusion in the instant case, that no transmutation occurred, is consistent with the result in *Stockdale.*

The final issue raised by appellant is whether the district court erred in awarding attorney fees to respondent on appeal from the magistrate division. The record shows the district judge awarded costs and attorney fees to respondent without setting forth any reasons for the award. From the arguments and briefs submitted to this court in the present appeal we presume the award of fees was based on I.C. § 12–121, which provides: "In any civil action, the judge may award reasonable attorney's fees to the prevailing party . . . ."

■ Appellant argues that under I.R.C.P. 54(e)(1) and (2) attorney fees could have properly been awarded only if the district judge found the appeal was brought or pursued frivolously, unreasonably or without foundation, and the judge set forth the basis and reasons for awarding such fees. Respondent argues that the failure of appellant to object to the memorandum of costs filed by respondent in the district court was a waiver of all objections to the claimed attorney fees under I.R.C.P. 54(d)(6).

The arguments overlook the fact that the district judge was sitting as an appellate court in this case. I.R.C.P. 83(u)(1) requires the district judge to "determine the appeal as an appellate court in the same manner and upon the same standards of review as an appeal from the district court to the Supreme Court under the statutes and law of this state, and the appellate rules of the Supreme Court." I.R.C.P. 83(x) makes the Idaho Appellate Rules (I.A.R.) applicable to such appeals.

I.A.R. 41 governs the procedure for applying for attorney fees on appeal. Assuming a claim for such fees was timely and properly made in this case, I.A.R. 41(c) and (d) first require the appellate (district) court to determine that a party is entitled to attorney fees on appeal. I.A.R. 41(d) and 40 provide the manner in which the amount of attorney fees shall be determined and how the objections thereto shall be made.

■ In February, 1979, the Idaho Supreme Court decided the case of *Minich v. Gem State Developers, Inc.,* 99 Idaho 911, 519 P.2d 1078 (1979) stating:

"In awarding reasonable attorney fees to the prevailing party on appeal, this court will be guided by the following general principles. Since the statutory power is discretionary, attorney fees will not be awarded as a matter of right. Nor will attorney fees be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented. In normal circumstances, attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. See I.R.C.P. 54(e)(1)." 99 Idaho at 918, 591 P.2d at 1085.

Under I.R.C.P. 83(u) the principles set forth in *Minich* are applicable to the appeal from the magistrate division to the district court, decided in April, 1980. *See Nicholls v. Blaser,* 102 Idaho 559, 562, 633 P.2d 1137, 1140 (1981). We hold that, under *Minich,* the district judge improperly determined respondent was entitled to attorney fees. This appeal, like the one before the district court, seriously addressed the then unresolved and genuine issue of transmutation.

We do not view either appeal as having been brought or pursued frivolously, unreasonably or without foundation. We therefore affirm the district court except as to attorney fees. Costs to respondent.

WALTERS, C. J., and BURNETT, J., concur.